# EXHIBIT 1

DocuSign Envelope ID: EB02D805-3A49-4817-B495-08FE2G9E8CAA

Electronically FILED by Superior Court of California, County of Riverside on 06/14/2022 04:53 PM
Case Number CVRI2202423 0000024411726 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Araceli Amezcua, Clerk

MATTHEW J. MURRAY (SBN 271461)
mmurray@altber.com
BRONWEN B. O'HERIN (SBN 336967)
boherin@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Petitioners/Plaintiffs Inland Empire United, Evelyn Arana, Elizabeth Ayala, Edgar Castelan, and Robert Garcia*

MOE KESHAVARZI (SBN 223759)
mkeshavarzi@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
 A Limited Liability Partnership
 Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, CA
Telephone: (213) 620-1780
Facsimile: (213) 620-1398

*Attorneys for Petitioners/Plaintiffs Araceli Caldera and Daisy Lopez*

JULIA A. GOMEZ (SBN 316270)
jgomez@aclusocal.org
PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELISSA GOODMAN (SBN 289464)
mgoodman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

RIVERSIDE HISTORIC COURTHOUSE

| | |
|---|---|
| INLAND EMPIRE UNITED, EVELYN ARANA, ELIZABETH AYALA, ARACELI CALDERA, EDGAR CASTELAN, ROBERT GARCIA, and DAISY LOPEZ, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> RIVERSIDE COUNTY, RIVERSIDE COUNTY BOARD OF SUPERVISORS, and KEVIN JEFFRIES, KAREN SPIEGEL, CHUCK WASHINGTON, V. MANUEL PEREZ, and JEFF HEWITT, in their official capacities as members of the Riverside County Board of Supervisors, and REBECCA SPENCER, in her official capacity as the Riverside County Registrar of Voters, <br><br> Respondents/Defendants. | Case No.  CVRI2202423 <br><br> **VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Unlimited Civil Case |

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT

DocuSign Envelope ID: EB02D805-3A49-4817-B185-08FE2C9E8CAA

Petitioners/Plaintiffs Inland Empire United, Evelyn Arana, Elizabeth Ayala, Araceli Caldera, Edgar Castelan, Robert Garcia, and Daisy Lopez hereby allege as follows:

### INTRODUCTION

1.      This action challenges the discriminatory and unrepresentative redistricting plan adopted by the Riverside County Board of Supervisors in December 2021 ("2021 Redistricting Plan"). Due to voting behavior and other historical and socioeconomic factors, supervisorial district lines impact whether Latino voters in Riverside County have equal opportunities to participate in the political process. To avoid the dilution of the Latino vote and maintain communities of interest, the Board should have adopted a map that captured geographically compact Latino communities into two districts where Latino residents formed the majority of the citizen voting age population ("CVAP"). Instead, the 2021 Redistricting Plan splits up politically cohesive Latino communities among Districts 1, 2, and 5, shutting out Latino voters in cities like Jurupa Valley and Moreno Valley from the opportunity to elect candidates of their choice.

2.      The 2021 Redistricting Plan negates the dramatic growth of the County's Latino community, and the Board adopted the Plan in the face of overwhelming evidence of that it would have discriminatory effects on Latino voters. The County has only had one Latino supervisor in its 129-year history, and the County has consistently pursued policies that are unresponsive or antithetical to the needs of Latino residents. The 2021 Redistricting Plan perpetuates this history of disenfranchisement and marginalization by abridging Latino residents' fundamental right to vote on account of their race, color, or membership in a language minority group in violation of the California Fair and Inclusive Redistricting for Municipalities and Political Subdivisions ("FAIR MAPS") Act and the equal protection provisions of the California Constitution.

3.      The FAIR MAPS Act is California's most significant redistricting reform in over half a century. The Act commands districted localities, including counties, to conduct fair and transparent redistricting processes. For example, counties must attach demographic data to draft maps, take steps to encourage underrepresented and non-English speaking communities to participate in the redistricting process, and provide the public with interpretation services upon request. To promote fair representation of racial and political minorities, the Act also imposes a

DocuSign Envelope ID: EB02D805-3A49-4817-B185-08FE2G9E8CAA

1    set of mandatory ranked map-drawing criteria that counties have a non-discretionary obligation to

2    follow and that prioritizes communities over incumbents, political parties, and candidates.

3         4.    Riverside County failed to comply with either the spirit or the letter of the FAIR

4    MAPS Act during the 2021 redistricting cycle. The County did not initially attach required

5    demographic information to its draft redistricting maps and did not consistently provide requested

6    Spanish interpretation services throughout the redistricting process. The County also disregarded

7    extensive and robust public input about historically underrepresented Latino communities.

8         5.    Indeed, the Board of Supervisors explicitly rejected Community Map 1.4, a

9    community-drafted plan that received wide public support and that showed it was possible to

10   create two Latino-majority CVAP districts that kept communities of interest whole. Instead, the

11   Board adopted an incumbency-protection plan that splits up Latino communities of interest and

12   includes only one Latino-majority district. The County rejected Community Map 1.4 because it

13   threatened to disrupt the electoral status quo for incumbents, as expressly noted by supervisors

14   during multiple redistricting hearings. The Board also attempted to justify its decision by

15   asserting that Community Map 1.4's district lines split certain municipalities, but this rationale is

16   inconsistent with the ranked criteria mandated by the FAIR MAPS Act.

17        6.    Petitioners/Plaintiffs bring this action to redress Respondents'/Defendants'

18   infringement of the voting rights of Riverside County's Latino residents and to require Riverside

19   County to adopt a redistricting plan that complies with the FAIR MAPS Act and California

20   Constitution and provides the County's Latino voters with the opportunity to elect candidates of

21   their choice.

22        7.    Petitioners/Plaintiffs seek a peremptory writ of mandate compelling

23   Respondents/Defendants to adopt a supervisorial plan that comports with the FAIR MAPS Act.

24   Petitioners/Plaintiffs also seek a declaration that the 2021 Redistricting Plan violates the voting

25   rights of Latino residents as secured by Article I, Section 2 and Article I, Section 7 of the

26   California Constitution, and and injunction requiring the adoption of a constitutional plan.

27                                    **PARTIES**

28        8.    Petitioner/Plaintiff Inland Empire United ("IE United") is a community-

organizing and coalition-building non-profit that was established in 2017. IE United's mission is to transform Inland Empire leadership and culture so that it is accountable to and better represents the identities and values of the region's residents, particularly residents who are members of historically disenfranchised and underrepresented communities, including Riverside County's Latino community. To effect intersectional and inclusive change, IE United partners with community leaders and organizations in Riverside and San Bernardino Counties and focuses on a set of policy platforms that put racial, gender, and LGBTQ+ equity at center.

9.      IE United's member organizations include Alianza Coachella Valley, Communities for a New California, Congregations Organized for Prophetic Engagement, Inland Empire Coalition for Immigrant Justice, Inland Congregations United for Change, Inland Region Equality Network, Starting Over, Inc., TODEC Legal Center, and Warehouse Worker Resource Center. All these organizations represent or have members who are Latino voters in Riverside County, including Latino voters who reside in Districts 1, 2, and 5 of the 2021 Redistricting Plan. The 2021 Redistricting Plan harms these members by breaking up their communities of interest and denying them the opportunity to elect candidates of their choice.

10.     IE United devotes time, energy, and resources to ensure accountable leadership in Riverside County. IE United does this by providing voting and redistricting training to community partners; collecting, organizing, and synthesizing community members' electoral preferences; and advocating for electoral districts and representatives that reflect the needs of partner organizations' constituents and members, many of whom are Latino electors who reside in Districts 1, 2, and 5 of the 2021 Redistricting Plan.

11.     IE United diverted resources from other efforts to engage community members in Riverside County's 2021 supervisorial redistricting process and to advocate for the adoption of a fair and lawful district plan. IE United trained and surveyed constituents of member and partner organizations about redistricting, purchased and used mapping software, worked with community members to develop and support Community Map 1.4, and worked with community members to oppose the adoption of redistricting maps that would dilute Latino voting power, including the final adopted map.

DocuSign Envelope ID: EB92D805-2A40-481F-B195-08FE2C9E8CAA

12.     The County's adoption of the 2021 Redistricting Plan, which dilutes the Latino vote and breaks up Latino communities of interest, frustrates IE United's mission and IE United's efforts to promote legislative representation that is responsive to the County's residents. The 2021 Redistricting Plan will continue to cause IE United to divert resources from other projects to develop and support the political power of Latino voters whose voting power is diluted by the redistricting plan.

13.     Petitioner/Plaintiff Evelyn Arana is a Latina resident and registered voter of Riverside County. She lives in the City of Corona, part of supervisorial District 2. Ms. Arana is part of a politically cohesive community of interest that includes Latino residents of Jurupa Valley and the northwest part of the City of Riverside, and the 2021 Redistricting Plan splits her community of interest between Districts 1 and 2. She lives in an area where Latino voters are sufficiently large and geographically compact to constitute the majority of eligible voters in a district and where, as a result, Latino voters would have the opportunity to elect their preferred candidates. Under the 2021 Redistricting Plan, however, Ms. Arana's supervisorial candidates of choice will typically be outvoted by the majority of the electorate in District 2. She is harmed by the 2021 Redistricting Plan because the map splits her community of interest and denies her the opportunity to elect candidates of her choice. She has paid taxes to Riverside County within the past year.

14.     Petitioner/Plaintiff Elizabeth Ayala is a Latina resident and registered voter of Riverside County. She lives in the northwest portion of the City of Riverside, which is part of supervisorial District 1. Ms. Ayala is part of a politically cohesive community of interest that includes Latino residents of Jurupa Valley and the northwest part of the City of Riverside, and the 2021 Redistricting Plan splits her community of interest between Districts 1 and 2. She is harmed by the 2021 Redistricting Plan because the map fractures her community of interest. She has paid taxes to Riverside County within the past year.

15.     Petitioner/Plaintiff Araceli Caldera is a Latina resident and registered voter of Riverside County. Ms. Caldera is civically engaged and organizes on behalf of immigrant rights. She lives in the City of Moreno Valley, part of supervisorial District 5. She is part of a politically

DocuSign Envelope ID: EB62D805-2A40-481F-B195-08FE2C9E8CAA

cohesive community of interest that includes Latino residents of Perris and Moreno Valley, and the 2021 Redistricting Plan splits her community of interest between Districts 1 and 5. Ms. Caldera lives in an area where Latino voters are sufficiently large and geographically compact to constitute the majority of eligible voters in a district and where, as a result, Latino voters would have the opportunity to elect their preferred candidates. Under the 2021 Redistricting Plan, however, Ms. Caldera's supervisorial candidates of choice will typically be outvoted by the majority of the electorate in District 5. She is harmed by the 2021 Redistricting Plan because the map splits her community of interest and denies her the opportunity to elect candidates of her choice. She has paid taxes to Riverside County within the past year.

16.     Petitioner/Plaintiff Edgar Castelan is a Latino resident and registered voter of Riverside County. Mr. Castelan is civically engaged and serves as an elected official for the Jurupa Area Recreation and Parks District. He lives in the City of Jurupa Valley, part of supervisorial District 2. He is part of a politically cohesive community of interest that includes Latino residents of Jurupa Valley and the northwest part of the City of Riverside, and the 2021 Redistricting Plan splits his community of interest between Districts 1 and 2. Mr. Castelan lives in an area where Latino voters are sufficiently large and geographically compact to constitute the majority of eligible voters in a district and where, as a result, Latino voters would have the opportunity to elect their preferred candidates. Under the 2021 Redistricting Plan, however, Mr. Castelan's supervisorial candidates of choice will typically be outvoted by the majority of the electorate in District 2. He is harmed by the 2021 Redistricting Plan because the map splits his community of interest and denies him the opportunity to elect candidates of his choice. He has paid taxes to Riverside County within the past year.

17.     Petitioner/Plaintiff Robert Garcia is a Latino resident and registered voter of Riverside County. Mr. Garcia is civically engaged and serves as a local school board member and volunteer with his local Lions Club. He lives in the City of Jurupa Valley, part of supervisorial District 2. He is part of a politically cohesive community of interest that includes Latino residents of Jurupa Valley and the northwest part of the City of Riverside, and the 2021 Redistricting Plan splits his community of interest between Districts 1 and 2. Mr. Garcia lives in an area where

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT

DocuSign Envelope ID: EB82D805-2A40-481Z-B195-08FE2C9E8CAA

1    Latino voters are sufficiently large and geographically compact to constitute the majority of

2    eligible voters in a district and where, as a result, Latino voters would have the opportunity to

3    elect their preferred candidates. Under the 2021 Redistricting Plan, however, Mr. Garcia's

4    supervisorial candidates of choice will typically be outvoted by the majority of the electorate in

5    District 2. He is harmed by the 2021 Redistricting Plan because the map splits his community of

6    interest and denies him the opportunity to elect candidates of his choice. He has paid taxes to

7    Riverside County within the past year.

8         18.    Petitioner/Plaintiff Daisy Lopez is a Latina resident and registered voter of

9    Riverside County. Ms. Lopez is civically engaged and organizes on behalf of local warehouse

10   workers. Ms. Lopez lives in the City of Eastvale, part of supervisorial District 2. She is part of a

11   politically cohesive community of interest that includes Latino residents of Jurupa Valley and the

12   northwest part of the City of Riverside, and the 2021 Redistricting Plan splits her community of

13   interest between Districts 1 and 2. Ms. Lopez lives in an area where Latino voters are sufficiently

14   large and geographically compact to constitute the majority of eligible voters in a district and

15   where, as a result, Latino voters would have the opportunity to elect their preferred candidates.

16   Under the 2021 Redistricting Plan, however, Ms. Lopez's supervisorial candidates of choice will

17   typically be outvoted by the majority of the electorate in District 2. She is harmed by the 2021

18   map because the map splits her community of interest and denies her the opportunity to elect

19   candidates of her choice. She has paid taxes to Riverside County within the past year.

20        19.    Respondent/Defendant Riverside County is a political and geographic subdivision

21   of the State of California established and operating under the laws of the State of California and

22   created for the provision of government services.

23        20.    Respondent/Defendant Riverside County Board of Supervisors is the County's

24   legislative body and is responsible for establishing County policies and administering Riverside

25   County government.

26        21.    Respondents/Defendants Kevin Jeffries, Karen Spiegel, Jeff Hewitt, Chuck

27   Washington, and V. Manuel Perez are members of the Board of Supervisors of Defendant

28   Riverside County. Each supervisor is sued in his or her official capacity only. Each supervisor

DocuSign Envelope ID: EB62D805-2A40-4817-B195-08FE2C9E8CAA

1    resides in the County of Riverside.

2        22.     Respondent/Defendant Rebecca Spencer is the Riverside County Registrar of

3    Voters. She is responsible for conducting county elections in Riverside County and is sued in her

4    official capacity only. She resides in the County of Riverside.

5                          **JURISDICTION AND VENUE**

6        23.     This Court has jurisdiction over this action pursuant to the California Constitution,

7    Article VI, § 10, because this case is a cause not given by statute to other trial courts, and under

8    Code of Civil Procedure § 1085(a), because this is a petition for writ of mandate. This action is

9    within the unlimited civil jurisdiction of this Court. Cal. Code Civ. Proc. § 88.

10       24.     Venue is proper in this Court because respondent/defendant Riverside County,

11    respondent/defendant Riverside County Board of Supervisors, and respondent/defendant

12    Riverside County Registrar of Voters are counties or local agencies situated in the County of

13    Riverside. Cal. Code Civ. Proc. § 394(a). Venue is also proper in this Court because all

14    respondents/defendants are situated in the County of Riverside and the injuries suffered by

15    petitioners/plaintiffs have occurred and, unless enjoined, will continue to occur, in the County of

16    Riverside. Cal. Code Civ. Proc. § 395(a).

17                          **FACTUAL ALLEGATIONS**

18    **Riverside County's Latino Population and Communities of Interest**

19        25.     Riverside is the fastest growing county in Southern California, and that growth has

20    been driven entirely by Latino and other residents of color. According to the 2020 United States

21    Census, Riverside County ha**s** a total population of 2,418,185 residents, of whom 49.7% are

22    Latino. The Latino share of the County's total population grew in the decade prior to the 2021

23    redistricting process, from 45.5% in 2010 to 49.7% in 2020. During the same period, the

24    County's non-Latino white ("white") share of the population decreased from 39.8% to 32.6%.

25        26.     The growth of Riverside County's Latino population is also reflected in its share of

26    the eligible voting population. The Census Bureau's 2019 5-year American Community Survey

27    ("ACS"), the most recently available CVAP data during the 2021 redistricting process, shows that

28    the County had a Latino CVAP of 39.3%. This is a significant increase from the County's Latino

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-08FE2C9E8CAA

CVAP share of 28.9% reflected in the 2009 5-year ACS.

27. Riverside's Latino population is sufficiently large and geographically compact to constitute over half of the voters in two districts on the west side of the County, a region where Latino voters, despite voting cohesively, have previously been unable to elect their preferred candidates. Cohesive Latino communities in this region are concentrated around two areas: (1) Jurupa Valley, northwest Riverside, Corona, Eastvale, and surrounding areas; and (2) Moreno Valley, Perris, and other surrounding areas. On the east side of the County, a cohesive Latino community is concentrated around the eastern Coachella Valley cities of Indio, Coachella, Thermal, Oasis, Mecca, and Northshore.

28. Latino residents in each of these three areas not only share racial identity and geography, but also form communities of interest that are joined by common social and economic interests. For example, Latino residents of Jurupa Valley, northwest Riverside, Corona, Eastvale, and surrounding areas ("Jurupa Valley/northwest Riverside community of interest") include many Spanish-speaking immigrant households of similar socioeconomic status who have organized around issues of environmental racism in their region, most recently resisting the construction of a $1.3 million warehouse facility next to a residential neighborhood in northeastern Jurupa Valley.

29. The large Spanish-speaking immigrant population in Moreno Valley, Perris, and surrounding areas ("Moreno Valley/Perris community of interest") is similarly united by a set of socioeconomic needs, including a desire for greater investment in the residential infrastructure of their rural-turned-suburban region, which lacks the resources of the adjacent City of Riverside.

30. In the eastern Coachella Valley, an exceptionally strong community of Spanish-speaking Latino residents share common goals for investment in affordable housing and residential infrastructure, such as roads and sidewalks, street lighting, and community parks.

**Decennial Redistricting Requirements**

31. Riverside County is geographically divided into five supervisorial districts. Each district elects one member to the County Board of Supervisors by a vote of eligible voters residing within the district. The resulting five-member Riverside County Board of Supervisors

acts as the governing and legislative body for Riverside County. County supervisors are elected to four-year terms, and the elections for supervisor within each district are staggered.

32. Following each federal decennial census, the Riverside County Board of Supervisors must adopt a new supervisorial district map so that, based on the most recent census data, the map complies with applicable state and federal law. Cal. Elec. Code § 21500.

33. The FAIR MAPS Act outlines detailed substantive and procedural requirements for decennial redistricting. The procedural requirements are meant to ensure transparency and encourage members of underrepresented communities and non-English speaking communities to participate in the redistricting process. *See* Cal. Elec. Code § 21508(a). To that end, the Act requires counties to, among other things, host a minimum number of public hearings, provide interpretation services upon request, and make draft maps with demographic data, including CVAP data, available to the public. Cal. Elec. Code §§ 21507.1(a), 21508(b) & (d)(2).

34. The FAIR MAPs Act also expressly requires county redistricting plans to comply with Section 2 of the federal Voting Rights Act ("VRA") and the United States and California Constitutions. Cal. Elec. Code. § 21500(b).

35. In addition, the FAIR MAPS Act established a set of non-discretionary ranked criteria that the County Board of Supervisors must apply when choosing a new supervisorial district map. In descending order of priority, these criteria are: 1) geographic contiguity of districts; 2) preserving the geographic integrity of communities of interest; 3) preserving the geographic integrity of cities and census designated places; 4) easily identifiable and understandable district boundaries; and 5) geographic compactness of districts. Cal. Elec. Code § 21500(c). Importantly, the Act does not include incumbency as a ranked criterion and is instead clear that communities of interest do not include relationships with political parties, incumbents, or political candidates. Elec. Code § 21500(c)(2).

36. During the 2021 redistricting cycle, the Riverside County Planning Commission served as an advisory redistricting commission for the Board and the Executive Office Technical Committee ("ETOC") was charged with developing draft redistricting maps. The public was also invited to submit draft redistricting maps. The Planning Commission and the Board held a series

1    of redistricting public hearings throughout the late summer and fall of 2021. The Board, however,

2    retained sole authority to select the final redistricting plan.

3          37.      Throughout the redistricting process, the County disregarded its legal obligations.

4    Supervisors openly commented on how the draft maps would affect their candidacy and the

5    Board prioritized incumbency over the FAIR MAPS Act's mandatory ranked redistricting

6    criteria. The County also prioritized the geographic integrity of cities and census-designated

7    places over the geographic integrity of communities of interest, at times erroneously identifying

8    cities as communities of interest. And the County did not make any efforts to assess its

9    obligations under the VRA until members of the public, community organizations, and legal

10    organizations raised the issue. The County consistently disregarded the issue of Latino vote

11    dilution and ultimately voted for a map that violates the FAIR MAPS Act and the California

12    Constitution.

13          38.      The County also failed to take steps to encourage non-English speaking

14    community members to engage in the redistricting process, as required under the FAIR MAPS

15    Act. For example, call-in instructions for public comment on draft maps were provided only in

16    English, and none of the redistricting meeting agendas or agenda attachments were provided in

17    Spanish. Although members of the public requested Spanish language interpretation throughout

18    the redistricting process, the County did not consistently make a Spanish interpreter available.

19    **The County's 2021 Supervisorial Redistricting Process**

20          39.      The Planning Commission held its first and second redistricting hearing on August

21    18, 2021, and September 22, 2021, and the Board held its first redistricting hearing on September

22    28, 2021. During the Board's first hearing, EOTC staff and members of the Board made

23    comments indicating that they did not understand the County's obligations under the FAIR

24    MAPS Act and VRA.

25          40.      Following the release of state-adjusted decennial census data on September 20,

26    2021, the EOTC published a series of draft supervisorial district maps, EOTC draft maps A

27    through D. The published maps did not include CVAP data necessary to assess compliance with

28    the FAIR MAPS Act and Section 2 of the VRA, and none of the draft maps included Latino-

1    majority CVAP districts as required by the FAIR MAPS Act and Section 2 of the VRA.

2        41.     In connection with the Planning Commission's October 6, 2021 hearing, members

3    of the public and organizations submitted public comment raising concerns with the County's

4    failure to include CVAP data with draft maps and the fact that the County had not released any

5    draft maps that included Latino-majority CVAP districts. The County also received comments

6    urging the Board to assess the County's obligations under the VRA, including by commissioning

7    an analysis of racially polarized voting ("RPV") in the County.

8        42.     During the October 6 hearing, EOTC staff represented that maps EOTC A-D had

9    been drawn with the understanding that cities were, by definition, communities of interest. When

10   EOTC staff was asked by the Planning Commission about the relative levels of importance of the

11   various redistricting criteria under the FAIR MAPS Act, a staff member responded that "all of

12   them are equally important." But the Act specifies that preserving the geographic integrity of

13   communities of interest must be prioritized over preserving cities within a district.

14       43.     Following the October 6 hearing, and after numerous public comments, the County

15   re-released maps EOTC A-D with CVAP data attached. The data confirmed for the public that

16   none of the initial set of draft supervisorial district maps included one, much less two, Latino-

17   majority CVAP districts. The County also released a new set of draft maps labeled EOTC E

18   through J and commissioned a study of racially polarized voting in the County.

19       44.     The public was invited to submit draft maps by November 1, 2021. The Inland

20   Empire Redistricting Hub ("the Hub"), a coalition of nearly two dozen community-based

21   organizations brought together by IE United, submitted a draft map that was subsequently revised

22   and labeled Community Map 1.4. In accordance with state and federal law, the Hub's redistricting

23   plan prioritized preserving the geographic integrity of communities of interest, including the

24   largely Latino Jurupa Valley/northwest Riverside, Moreno Valley/Perris, and eastern Coachella

25   Valley communities of interest. Map 1.4 included two geographically compact districts where

26   Latino residents constituted the majority of the citizen age voting population. One of these

27   districts, draft district 2, captured the Jurupa Valley/northwest Riverside community of interest.

28   The other district, draft district 5, captured the Moreno Valley/Perris community of interest.

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-08FE2C9E8CAA

45.     The County released a summary of its RPV analysis on November 4, 2021. The County's consultants found racially polarized voting countywide and in each district based on a review of all contested primary and general supervisorial elections from 2014 to 2020 and based on eight statewide races involving a Latino candidate. The County's RPV analysis further found that Latino candidates of choice in Riverside County have been unsuccessful due to white bloc voting for the white candidate of choice. Thus, by November 4, the County knew that it was possible to adopt a map with two Latino-majority CVAP districts, as demonstrated by Community Map 1.4, and that a failure to adopt such a map would dilute the vote of Latino communities on the west side, as confirmed by the County's RPV analysis.

46.     The Board ultimately advanced versions of EOTC F, EOTC H, and Community Map 1.4 as final maps for consideration. Unlike Community Map 1.4, EOTC F and H included only one district that was barely over 50% Latino CVAP, draft district 1, centered around the City of Riverside. EOTC F and H each created this bare-majority Latino district by excluding parts of cohesive Latino communities on both ends of district 1. This included cutting off all or part of Jurupa Valley and all or part of Moreno Valley.

47.     In connection with the December 1, 2021 Board redistricting hearing, the County released a table with a side-by-side comparison of the three final maps. The table showed that EOTC F, the map that the Board would eventually adopt, split more communities of interest than Community Map 1.4. The table also showed that Community Map 1.4 was the only map that created two Latino-majority CVAP districts and that kept both the Jurupa Valley/northwest Riverside and the Moreno Valley/Perris communities of interest whole. Nonetheless, the table erroneously listed EOTC F and EOTC H as complying with the VRA because these maps purportedly contained two "Latino opportunity-to-elect" districts, draft districts 1 and 4. District 4 in all configurations, however, had a Latino citizen voting age population of no more than 38.7% and would do nothing to redress the vote dilution injuries of Latino voters on the west side of the County.

48.     During the final redistricting hearing on December 7, 2021, Board members once again made statements that confirmed that they were adopting EOTC F and rejecting Community

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-08FE2C9E8CAA

Map 1.4 in violation of the FAIR MAPS Act. For example, Supervisor Hewitt commented that he could not support Community Map 1.4 because it split up more cities than EOTC F, ignoring the fact that EOTC F split more communities of interest. Supervisor Hewitt stated: "I can't see Map 1.4, which divides up so many cities to try to check off one box, and I will argue with anyone whether someone with a little bit darker skin can represent any group of people any better than I can." Supervisor Hewitt also stated that he could not support Community Map 1.4 because it would make Chuck Washington his supervisor, and Supervisor Spiegel complained that Map 1.4 would place her in a different supervisorial district. The Supervisors' statements indicate they were rejecting the creation of two Latino-majority CVAP districts because Community Map 1.4 upset the supervisorial representation status quo and had the potential to affect incumbents' reelection.

49.     The County did not attempt to draw a map that would preserve the Jurupa Valley/northwest Riverside and Moreno Valley/Perris communities of interest and address the County's asserted concerns about other aspects of Community Map 1.4. Instead, the Board selected EOTC F, ignoring its affirmative obligation under the FAIR MAPS Act and the California Constitution to adopt a redistricting plan that avoided discriminatory results. In doing so, the County also ignored overwhelming community testimony and other evidence that the 2021 Redistricting Plan would dilute Latino voting strength and disparately impact the voting rights of Latino residents.

**The 2021 Redistricting Plan**

50.     The County Board of Supervisors adopted the 2021 Redistricting Plan on December 14, 2021. The plan took effect for the June 2022 primaries for Districts 2, 4, and 5, and will take effect in 2024 for elections in Districts 1 and 3.

51.     The 2021 Redistricting Plan cracks the Latino communities of interest in Jurupa Valley/northwest Riverside and Moreno Valley/Perris so that these communities of interest are prevented from electing their candidates of choice. The Plan thereby dilutes the voting power of those Latino communities.

52.     The 2021 Redistricting Plan disparately impacts Latino voters in Riverside County

1    by making it harder for them to elect their candidate of choice than it is for similarly situated

2    white electors to do so.

3           53.     Rather than preserving the historically underrepresented Jurupa Valley/northwest

4    Riverside and Moreno Valley/Perris Latino communities of interest within single supervisorial

5    districts in a manner that would ensure fair and effective representation of those communities, the

6    2021 Redistricting Plan divides these communities to serve pro-incumbent goals and to prioritize

7    the geographic integrity of cities and census designated places over the geographic integrity of

8    these communities of interest. The division of these communities across supervisorial districts is

9    not justified by any statutorily approved criteria the Board of Supervisors may consider, and must

10    prioritize in a particular order, when adopting a redistricting plan.

11           54.     Respondents/Defendants are engaging in, and will continue to engage in, the

12    illegal expenditure and waste of County funds by conducting elections and operating the Board of

13    Supervisors pursuant to a redistricting plan that does not comply with the FAIR MAPS Act or the

14    California Constitution.

15    **Racially Polarized Voting**

16           55.     There is a clear and persistent pattern of racially polarized voting between Latino

17    and white voters in Riverside County elections. Latino voters in the County are politically

18    cohesive and tend to prefer the same candidates, and white voters usually vote as a bloc to defeat

19    Latino voters' preferred candidates. Racially polarized voting exists throughout the County,

20    including on the west side of the County where an additional Latino-majority district can and

21    should be drawn.

22           56.     Examples of Riverside County elections exhibiting racially polarized voting

23    between Latino and white voters include, but are not limited to, the 2018 District 5 Board of

24    Supervisors primary, the 2014 District 4 Board of Supervisors primary, and numerous statewide

25    elections.

26           57.     The 2018 District 5 Board of Supervisors primary involved five candidates. The

27    two Latino candidates received a majority of the Latino vote and lost to the top two candidates

28    preferred by white voters, Russ Bogh and Jeff Hewitt.

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-98FE2C9E8CAA

58.     In the 2014 District 4 Board of Supervisors primary, Latino candidate V. Manuel Perez received 72.3% of the Latino vote and only 28.7% of the white vote, while the non-Latino candidate who prevailed, John Benoit, received 71% of the white vote.

59.     Numerous statewide elections have also exhibited racially polarized voting, including six general elections involving Latino candidates since 2010 and nine of the primary elections involving Latino candidates since 2010. In each of these statewide races, Latino voters consistently voted differently than white voters. Moreover, for each of these statewide electoral contests, racially polarized voting occurred in every supervisorial district in Riverside County.

**Latino Residents Do Not Have Equal Opportunities to Participate in County Politics**

60.     Although Riverside County has a large and growing Latino population, that population does not have equal opportunities to participate in the County's political sphere. Racially polarized voting and a historic pattern continuing into the present day of Latino discrimination by County government have prevented Latino-preferred candidates from being elected to the County Board of Supervisors.

61.     In addition to having their political preferences blocked by racially polarized voting, Riverside County's Latino residents' political participation has also been limited by numerous instances of government-sanctioned discrimination, both historic and present day, that have excluded them from equal opportunity to participate in the County's political sphere.

62.     Historically, Latinos in Riverside County and in California generally have been subject to official discrimination. A de facto system of racial exclusion of Mexican-Americans was present in California from the 1920s into the 1960s in the form of racially restricted covenants, segregation in education, and "whites only" public facilities and businesses. For example, during the first half of the 20th Century, City of Riverside facilities such as municipal pools were racially segregated, and restrictive covenants prevented Latinos from buying homes in many city neighborhoods. Many schools in the city remained segregated until 1965.

63.     More recently, in 2010, the U.S. Department of Justice ("DOJ") sued the County for failing to provide services to Spanish-speaking voters as required under Section 203 of the VRA. DOJ election officials monitored Riverside County's November 2008 election, and federal

1    observers monitored its 2010 general election for VRA compliance, including provision of

2    language assistance.

3         64.    The County's voting practices and procedures have also worked to exclude Latino

4    voters from political participation. In 2011, when the County redrew supervisorial district

5    boundary lines, Latino residents made up 45.5% of the County's total population and 28.9% of its

6    CVAP. Yet the Board of Supervisors adopted a supervisorial boundary map that did not include *a*

7    *single* Latino-majority district. Given racially polarized voting in the County, it was almost

8    impossible for Latino voters to elect their preferred candidates.

9         65.    California's majority vote and runoff requirements for Board of Supervisors

10   elections pose another obstacle to Latino political participation in the County by increasing the

11   expense and burden to Latino candidates for whom electoral victory is already an uphill battle.

12        66.    Riverside County's Board of Supervisors elections have also featured subtle racial

13   appeals. In the 2018 District 4 supervisorial race, Jan Harnik's campaign released a television

14   commercial that showed Supervisor Perez in front of a bloodied wall. The commercial stated that

15   "Manuel Perez's policies let murderers, rapists, and child molesters go free" and showed a picture

16   of a Latino man in an orange jumpsuit and Supervisor Perez accented with blinking police siren

17   lights. Harnik also distributed mailers featuring images of men of color in police lineups and the

18   language "Manuel Perez – Wrong on Crime" in large font.

19        67.    Given that Latino residents have been subjugated to official discrimination,

20   including voting practices or procedures that enhance the opportunity for discrimination against

21   Latino voters and subjugate their voting preferences, it is not surprising that Latino candidates

22   have had almost no success in supervisorial district races. Despite Riverside County's large

23   Latino population, in the County's 129-year history there has only ever been one Latino member

24   of the Riverside County Board of Supervisors.

25        68.    That Latino supervisor, V. Manuel Perez, did not join the Board until 2017, and he

26   did so only by virtue of an appointment by the governor of California to fill an out-of-cycle

27   vacancy in District 4. Supervisor Perez had previously been defeated in a 2014 District 4

28   supervisorial race infected with racially polarized voting. Supervisor Perez was elected to the

Board in 2018, and his incumbency played an unusually important role in his election.

69.     From 2014 to 2020, other Latino candidates ran for Riverside County's Board of Supervisors, but none were successful.

70.     Because Riverside County's Latino residents do not have equitable opportunities to participate in the political process, the Riverside County Board of Supervisors is unresponsive to the needs of Riverside County's Latino community. Rather than serving these constituents, the Board of Supervisors has pursued projects demonstrating disregard for the distinct needs and policy preferences of its Latino constituents and has been sued multiple times for discriminatory and inhumane programs impacting Latino residents.

71.     For example, the County was sued in 1992 when it chose to erect the "Mecca Migrant Farmworker Campground," a complex of tent-like structures widely regarded as inhumane and demeaning, rather than seeking federal funds to construct affordable housing for largely Latino seasonal migrant farmworkers in the Coachella Valley. A decade after the discrimination lawsuit was filed, the County finally funded a public restroom facility for seasonal farmworkers in Mecca. The County, however, has done little else to address the housing needs that remain for Latino workers in the Coachella Valley. The County's failure to provide needed housing resources directly impacts the County's Latino seasonal workers who reside in County cities outside the Coachella Valley, such as Perris, and is perceived as anti-Latino by many of the County's Latino residents.

72.     In 2011, a Jurupa Valley based environmental group sued the County after it approved a 65-acre industrial complex in a primarily Latino residential area of Mira Loma. Residents there, already subject to some of the highest pollution in the country, had organized for nearly ten years to keep the project out of their neighborhood. Yet, despite contentious public testimony opposing the development, the Board of Supervisors ultimately approved the full project. The lawsuit highlighted the County's failure to analyze and mitigate the project's air quality and noise impacts on Mira Loma's Latino residents; such failure follows a pattern since the 1990s of County approval for warehouse projects in the Jurupa Valley region without regard for their harmful health impacts to the region's primarily Latino community.

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-98FE2C9E8CAA

73.     More recently, in 2019, the County settled a lawsuit over the County's "Youth Accountability Teams" program, an onerous juvenile diversion effort that disproportionately referred Latino youth to the criminal system. Riverside County had funded this program since 2001.

74.     The Board of Supervisors also consistently allocates funding in manners contrary to the needs of its Latino residents. As one example, the Board recently increased law enforcement funding in the face of high-profile public reports highlighting its district attorney and sheriff's anti-Latino policing practices, such as prosecuting Latino youth as adults at rates nearly ten times as high as their white counterparts. Meanwhile, the County Housing Authority has a policy of denying or terminating rental assistance for individuals with criminal records, a policy that disproportionately affects Latino residents. In 2019, the County settled another lawsuit over its public assistance program, which had been unlawfully denying aid to unemployed and differently abled residents for years before the lawsuit. The County had illegally been denying aid to those with criminal records, another policy disproportionately affecting Latino residents. These examples are not exhaustive.

75.     Riverside County's Latino residents predictably bear the present effects of this longstanding societal, economic, and educational discrimination in numerous respects, and white residents of Riverside County fare better than Riverside County's Latino residents on several measures of socioeconomic status as shown by 2020 5-year ACS data.

76.     Riverside County's Latino residents are more likely to live in poverty than white residents. Moreover, the median household income for white residents in the County was $78,847, while the median household income for Latinos in the County was $61,637.

77.     Riverside County's Latino residents are also less likely to have health insurance coverage. Nearly 12% of Latino residents in Riverside County have no health insurance, compared to 7% of white residents.

78.     There is a significant gap in educational achievement between Riverside County's Latino and white residents. Approximately one third of Riverside County's Latino residents have not received a high school diploma, compared to only 12.7% of the County's white residents.

Only 11.5% of the County's Latino residents have received a bachelor's degree or higher, compared to 24% of the County's white residents.

79.     Riverside County's Latino residents are far less likely to live in a healthy built environment than the County's white residents. They are more likely to live in proximity to hazardous sites, such as federal superfund or military evaluation sites, and to have their residences exposed to toxic releases from emitting facilities. They also are less likely to have access to greenspace.

**FIRST CAUSE OF ACTION**
**WRIT OF MANDATE (Cal. Code Civ. Proc. § 1085)**
**FOR VIOLATIONS OF FAIR MAPS ACT (Cal. Elec. Code §§ 21500-21509)**

**(All Petitioners/Plaintiffs Against All Respondents/Defendants)**

80.     Petitioners/Plaintiffs incorporate by reference the allegations set forth in the previous paragraphs.

81.     Petitioners/Plaintiffs have public interest standing to seek writ relief in that the claims raised by this Petition/Complaint are based on public rights and the object of this action is to enforce a public duty.

82.     Petitioners/Plaintiffs also have a beneficial interest in the issuance of relief sought by the Petition/Complaint, in that the individual Petitioners/Plaintiffs' and IE United's member-organizations' members' voting power and rights are directly affected by the 2021 Redistricting Plan, and IE United's mission and resources are impacted by the Plan.

83.     Respondents/Defendants have, and at all relevant times have had, clear, present, and ministerial duties to comply with California's FAIR MAPS Act and to adopt and implement a redistricting plan that complies with the Act.

84.     Despite their ability to perform these ministerial duties, Respondents/Defendants have adopted a redistricting plan, and will continue to implement that plan if not promptly corrected, that violates the FAIR MAPS Act.

85.     California's FAIR MAPS Act requires counties that elect members of the county board of supervisors by district to draw new supervisorial district boundaries after each federal decennial census, and to do so pursuant to a set of mandatory criteria. First, the FAIR MAPS Act

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-08FE2C9E8CAA

1   requires that supervisorial districts be substantially equal in population and otherwise comply

2   with the United States Constitution, the California Constitution, and the federal Voting Rights

3   Act of 1965, as amended, 52 U.S.C. § 10301, *et seq.* Second, the Act requires counties to follow a

4   set of priority-ordered criteria when adopting their supervisorial district boundaries. Preserving

5   the geographic integrity of communities of interest must be the second-most important of these

6   criteria, superseded only by geographic contiguity. The Act specifies that communities of interest

7   do not include relationships with incumbents, and the Act does not list incumbency as a

8   mandatory criterion for redistricting decisions.

9       86.     Riverside County is a county that elects members of the county's board of

10   supervisors by district. The 2021 Redistricting Plan violates the FAIR MAPS Act in four ways.

11   Each of these four violations alleged below provides an alternative and independently sufficient

12   theory establishing a violation of the FAIR MAPS Act. None of these theories is itself a necessary

13   element of Plaintiffs/Petitioners' FAIR MAPS Act claim.

14   **FAIR MAPS Act Violation 1: Failure to Comply with California Constitution**

15       87.     First, the 2021 Redistricting Plan violates the FAIR MAPS Act because it does not

16   comply with the California Constitution's equal protection guarantees. Under those provisions of

17   the California Constitution, government actions with a disparate impact on the fundamental rights

18   of a suspect class, such as Latinos, are subject to strict constitutional scrutiny.

19       88.     The 2021 Redistricting Plan disparately impacts Latino voters' ability to elect

20   candidates of their choice to the County Board of Supervisors without any compelling

21   government purpose.

22       89.     The 2021 Redistricting Plan splits the primarily Latino Jurupa Valley/northwest

23   Riverside and Moreno Valley/Perris communities of interest. Latino voters in these communities

24   are sufficiently numerous and geographically compact to constitute the majority of the CVAP in

25   two properly apportioned districts.

26       90.     Racially polarized voting persists in elections of members to the Riverside County

27   Board of Supervisors. A white majority of voters typically vote as a bloc such that the Latino

28   voters' candidates of choice are defeated.

DocuSign Envelope ID: 5B02D805-2A40-4847-B495-08FE2C9E8CAA

91.     The 2021 Redistricting Plan results in the denial or abridgment, on account of race, color, or ethnicity, of the voting rights of Riverside County's eligible Latino voters residing in the Jurupa Valley-Riverside and Perris-Moreno Valley communities of interest, by diluting their voting strength. As compared to the voting power of white voters, the 2021 Redistricting Plan impairs the ability of Latino voters in these communities of interest to elect candidates of their choice. The 2021 Redistricting Plan gives Latino voters in Riverside County less opportunity to participate in the political process than similarly situated non-Latino members of the electorate.

92.     The division of the Jurupa Valley/northeast Riverside and Moreno Valley/Perris Latino communities of interest in Riverside County's 2021 Redistricting Plan does not serve a compelling government purpose. The division of these communities of interest is not necessary to ensure substantial population equality between districts, nor to ensure districts' geographic contiguity, nor to align with the ranked priorities the California legislature has required boards of supervisors to follow when redistricting. In fact, the division of these communities of interest was driven by a purpose—protecting incumbents—that the California legislature excluded from its list of mandatory ranked redistricting criteria. Moreover, the division of these communities of interest directly contradicts the California legislature's directive that counties prioritize preserving communities of interest within a single district.

**FAIR MAPS Act Violation 2: Failure to Comply with the Federal Voting Rights Act**

93.     Second, the 2021 Redistricting Plan violates the FAIR MAPS Act because it does not comply with Section 2 of the federal Voting Rights Act. The 2021 Redistricting Plan splits the primarily Latino Jurupa Valley/northwest Riverside and Moreno Valley/Perris communities of interest. Latino voters in these communities are sufficiently numerous and geographically compact to constitute the majority of the CVAP in two properly apportioned districts.

94.     Racially polarized voting, in which a white majority of voters typically vote as a bloc such that the Latino voters' candidates of choice are defeated, persists in elections of members to the Riverside County Board of Supervisors.

95.     Consequently, Riverside County's 2021 Redistricting Plan dilutes Latino voting strength and denies or abridges the rights of Latino voters in Riverside County on account of their

1  race, color, or membership in a language minority group. By diluting and abridging Latino voting

2  rights, the County's failure to adopt a redistricting plan with a second majority Latino CVAP

3  district impairs the ability of Latino voters to elect candidates of their choice and gives them less

4  opportunity than other members of the electorate to participate in the political process.

5  **FAIR MAPS Act Violation 3: Failure to Use Mandatory Ranked Criteria**

6         96.     Third, Riverside County's 2021 redistricting plan violates the FAIR MAPS Act

7  because Respondents/Defendants did not apply the Act's mandatory ranked criteria in the order of

8  priority required by the Act. Instead, the County prioritized lower-ranked criteria, such as

9  preserving the geographic integrity of cities, above maintaining within a single district

10 communities of interest whose fair and effective representation requires such preservation. By its

11 own admission, the County adopted a redistricting plan that splits more communities of interest

12 than Community Map 1.4, and the County offered no reasoned analysis as to why such divisions

13 were necessary or superior to those proposed in Community Map 1.4 other than that Community

14 Map 1.4 split more cities across district lines. The FAIR MAPS Act, however, imposed a

15 mandatory duty on the County to prioritize communities of interest *over* such municipal

16 boundaries.

17 **FAIR MAPS Act Violation 4: Improper Consideration of Incumbency**

18        97.     Fourth, Riverside County's 2021 redistricting plan violates the FAIR MAPS Act

19 because Respondents/Defendants prioritized incumbency protection over complying with the

20 FAIR MAPS Act's mandatory ranked criteria. Protecting incumbents is not one of the mandatory

21 and ranked criteria the Act requires county boards of supervisors to follow when redistricting, and

22 the Act explicitly states that communities of interest do *not* include incumbency. Yet supervisors

23 repeatedly voiced concerns about how draft districts would impact their constituencies,

24 announced opposition to Community Map 1.4 specifically because of its potential impacts on

25 incumbents, and failed to provide a reasoned analysis for rejecting Community Map 1.4, whose

26 two majority Latino CVAP districts had the potential to disrupt the status quo and prevent

27 incumbent reelection.

28        98.     Respondents/Defendants, collectively and individually, are responsible for

1    imposing, applying, maintaining, and/or failing to prevent the use of Riverside County's 2021

2    Redistricting Plan for electing members of the Board of Supervisors.

3          99.    Petitioners/Plaintiffs have no plain, speedy, or adequate remedy in the ordinary

4    course of law to compel Respondents/Defendants to perform their mandatory duty to comply with

5    the FAIR MAPS Act.

6          100.   There are no administrative remedies available to Petitioners/Plaintiffs to obtain

7    the requested relief.

8          101.   Respondents/Defendants' wrongful conduct has caused, is causing, and unless

9    enjoined will continue to cause irreparable injury to Petitioners/Plaintiffs. Petitioners/Plaintiffs

10   have no adequate remedy at law for the injury they have suffered, are suffering, and will continue

11   to suffer unless Defendants' wrongful conduct is enjoined.

**SECOND CAUSE OF ACTION**
**CALIFORNIA CONSTITUTION (Article I, §§ 2 & 7)**

**(All Petitioners/Plaintiffs Against All Respondents/Defendants)**

15         102.   Petitioners/Plaintiffs incorporate by reference the allegations of fact set forth in the

16   previous paragraphs.

17         103.   Under the California Constitution's equal protection provisions, government action

18   with a disparate impact on the fundamental rights of a suspect class, such as Latinos, is subject to

19   strict scrutiny. Here, Riverside County's 2021 Redistricting Plan disparately impacts Latino

20   voters' ability to elect candidates of their choice to the County Board of Supervisors without any

21   compelling government purpose.

22         104.   The 2021 Redistricting Plan splits the primarily Latino Jurupa Valley/northwest

23   Riverside and Moreno Valley/Perris communities of interest. Latino voters in these communities

24   are sufficiently numerous and geographically compact to constitute the majority of the CVAP in

25   two properly apportioned districts.

26         105.   Racially polarized voting persists in elections of members to the Riverside County

27   Board of Supervisors. A white majority of voters typically vote as a bloc such that the Latino

28   voters' candidates of choice are defeated.

106. Riverside County's 2021 Redistricting Plan results in the denial or abridgment, on account of race or color, of the voting rights of Riverside County's eligible Latino voters residing in the Jurupa Valley/Riverside and Moreno Valley/Perris communities of interest, by diluting their voting strength. As compared to the voting power of white voters, the 2021 Redistricting Plan impairs the ability of Latino voters in these communities of interest to elect candidates of their choice. The 2021 Redistricting Plan gives Latino voters in Riverside County less opportunity to participate in the political process than similarly situated non-Latino members of the electorate.

107. The division of the Jurupa Valley/northwest Riverside and Perris/Moreno Valley Latino communities of interest in Riverside County's 2021 Redistricting Plan does not serve a compelling government purpose. The division of these communities of interest is not necessary to ensure substantial population equality between districts, nor to ensure districts' geographic contiguity, nor to align with the ranked priorities the California legislature has required boards of supervisors to follow when redistricting. In fact, the division of these communities of interest was driven by a purpose—protecting incumbents— that the California legislature excluded from its list of mandatory ranked redistricting criteria. Moreover, the division of these communities of interest directly contradicts the California legislature's directive that counties prioritize preserving communities of interest within a single district.

108. Respondents/Defendants, collectively and individually, are responsible for imposing, applying, maintaining, and/or failing to prevent the use of Riverside County's 2021 Redistricting Plan for electing members of the Board of Supervisors.

109. An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of all Petitioners/Plaintiffs and Respondents/Defendants for which all Petitioners/Plaintiffs desire a declaration of rights.

110. Respondents/Defendants' wrongful conduct has caused, is causing, and unless enjoined will continue to cause irreparable injury to Petitioners/Plaintiffs. Petitioners/Plaintiffs have no adequate remedy at law for the injury they have suffered, are suffering, and will continue to suffer unless Respondents/Defendants' wrongful conduct is enjoined.

**PRAYER FOR RELIEF**

Wherefore, as remedies for the causes of action asserted above, Petitioners/Plaintiffs request judgment for Petitioners/Plaintiffs for:

(1)     A peremptory writ of mandate compelling Respondents/Defendants to adopt a supervisorial district map that comports with the FAIR MAPS Act, including by ensuring that neither the Latino community of interest centered around northwest Riverside and Jurupa Valley nor the Latino community of interest centered around Perris and Moreno Valley is split across different supervisorial districts;

(2)     A declaratory judgment that Riverside County's 2021 redistricting plan violates the FAIR MAPS Act;

(3)     Preliminary and permanent injunctive relief requiring the adoption of a supervisorial district map that comports with Article I, Section 2 and Article I, Section 7 of the California Constitution, including by ensuring that neither the Latino community of interest centered around northwest Riverside and Jurupa Valley nor the Latino community of interest centered around Perris and Moreno Valley is split across different supervisorial districts;

(4)     A declaratory judgment that Riverside County's 2021 redistricting plan violates the voting rights of Petitioners/Plaintiffs as secured by Article I, Section 2 and Article I, Section 7 of the California Constitution;

(5)     Attorneys' fees and costs of this action pursuant to Cal. Code of Civil Procedure §1021.5 and other applicable law;

(6)     Such other and further relief as the nature of Petitioners/Plaintiffs' cause may warrant.

Dated: June 14, 2022                          MATTHEW J. MURRAY
                                              BRONWEN B. O'HERIN
                                              ALTSHULER BERZON LLP


                                              By: /s/ Bronwen B. O'Herin

                                              *Attorneys for Plaintiffs Petitioners/Plaintiffs Inland*

1    *Empire United, Evelyn Arana, Elizabeth Ayala,*
     *Edgar Castelan, and Robert Garcia*

2    JULIA A. GOMEZ
3    PETER BIBRING
     MELISSA GOODMAN
4    ACLU FOUNDATION OF SOUTHERN
     CALIFORNIA

5
     MOE KESHAVARZI
6    SHEPPARD, MULLIN, RICHTER &
     HAMPTON LLP

7
     *Attorneys for Petitioners/Plaintiffs Araceli Caldera*
8    *and Daisy Lopez*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 <u>VERIFICATION</u>

2      I am the Executive Director of Inland Empire United, a party to this action, and am

3 authorized to make this verification on its behalf. I have read the foregoing Verified Petition for

4 Writ of Mandate and Complaint for Declaratory and Injunctive Relief and know its contents. The

5 allegations in the Petition are true to my own knowledge, except where they are made on

6 information and belief, in which case I am informed and believe them to be true. I declare under

7 penalty of perjury of the laws of the State of California that the foregoing is true and correct.

8

9      Executed on June 14, 2022, in _____Corona, California_____.

10

11 _____

12                        Michael Gomez Daly, Executive Director
                                     Inland Empire United

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT