MATTHEW J. MURRAY (SBN 271461)
mmurray@altber.com
BRONWEN B. O'HERIN (SBN 336967)
boherin@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Petitioners/Plaintiffs Inland Empire United, Evelyn Arana, Elizabeth Ayala, Edgar Castelan, and Robert Garcia*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

INLAND EMPIRE UNITED, EVELYN ARANA, ELIZABETH AYALA, ARACELI CALDERA, EDGAR CASTELAN, ROBERT GARCIA, and DAISY LOPEZ,

Petitioners/Plaintiffs,

v.

RIVERSIDE COUNTY, RIVERSIDE COUNTY BOARD OF SUPERVISORS, and KEVIN JEFFRIES, KAREN SPIEGEL, CHUCK WASHINGTON, V. MANUEL PEREZ, and JEFF HEWITT, in their official capacities as members of the Riverside County Board of Supervisors, and REBECCA SPENCER, in her official capacity as the Riverside County Registrar of Voters,

Respondents/Defendants.

Case No. **5:22-CV-1366**

[Riverside County Superior Court Case No. CVRI 2202423]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: September 30, 2022
Time: 2:00pm
Location: By Zoom
Judge: Hon. Sunshine S. Sykes

*Additional counsel*

JULIA A. GOMEZ (SBN 316270)
jgomez@aclusocal.org
PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELISSA GOODMAN (SBN 289464)
mgoodman@aclusocal.org
PETER J. ELIASBERG (SBN 189110)
peliasberg@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MOE KESHAVARZI (SBN 223759)
mkeshavarzi@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, CA
Telephone: (213) 620-1780
Facsimile: (213) 620-1398

*Attorneys for Petitioners/Plaintiffs*
*Araceli Caldera and Daisy Lopez*

## NOTICE OF MOTION AND MOTION TO REMAND

PLEASE TAKE NOTICE that at 2:00 P.M. on September 30, 2022, or as soon thereafter as this matter can be heard, by video conference via the Court's Zoom Webinar Information link available at https://www.cacd.uscourts.gov/honorable-sunshine-s-sykes?page=1 or otherwise as ordered by the Court, Plaintiffs Inland Empire United, Evelyn Arana, Elizabeth Ayala, Araceli Caldera, Edgar Castelan, Robert Garcia, and Daisy Lopez will, and hereby do, move the Court, pursuant to 28 U.S.C. § 1447(c), for an order to remand this case to the state court from which it was removed and an order stating that Plaintiffs are entitled to their fees and costs incurred because of Defendants' improper removal. This case does not satisfy any ground for removal, including the single ground cited in Defendants' Notice of Removal. 28 U.S.C. §§ 1331, 1441(a). Plaintiffs are entitled to fees and costs because Defendants' removal is objectively unreasonable.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 10, 2022.

This motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, all pleadings, files, and records in this action, and such other argument as may be received by this Court at the hearing on this Motion.

Dated: August 18, 2022

Respectfully submitted,

By: *<u>/s/Matthew J. Murray</u>*
Matthew J. Murray

MATTHEW J. MURRAY
BRONWEN B. O'HERIN
Altshuler Berzon LLP

*Attorneys for Petitioners/Plaintiffs Inland Empire United, Evelyn Arana, Elizabeth Ayala, Edgar Castelan, and Robert Garcia*

JULIA A. GOMEZ
PETER BIBRING
MELISSA GOODMAN
PETER J. ELIASBERG
ACLU Foundation of Southern California

MOE KESHAVARZI
Sheppard, Mullin, Richter & Hampton LLP

*Attorneys for Petitioners/Plaintiffs*
*Araceli Caldera and Daisy Lopez*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

FACTUAL AND PROCEDURAL BACKGROUND ........ 1

ARGUMENT ........ 4

I. Defendants' removal of this case was improper ........ 4

A. Plaintiffs' FAIR MAPS Act claim does not "necessarily raise" a federal issue ........ 4

B. Exercising federal jurisdiction would disrupt the federal-state balance ........ 8

II. The Court should award Plaintiffs their costs and fees ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Board of Supervisors v. LAFC*,
3 Cal.4th 903 (1992) .... 10

*Caldwell v. Northern Pac. Morg. Corp.*,
2011 WL 1303629 (N.D. Cal. Apr. 4, 2011) .... 10

*California ex rel. Herrera v. Guajardo*,
2011 WL 62432 (N.D. Cal. Jan. 7, 2011) .... 7, 8

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) .... 4, 5

*Christianson v. Colt Inds. Operating Co.*,
486 U.S. 800 (1988) .... 6, 12

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006) .... 5

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) .... 4

*Gershfeld v. Champion Aerospace LLC*,
2013 WL 12123685 (C.D. Cal. Oct. 8, 2013) .... 7

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .... 5, 9

*Growe v. Emison*,
507 U.S. 25 (1993) .... 11, 12

*Guerra v. Carrington Mortg. Servs. LLC*,
2010 WL 2630278 (C.D. Cal. June 29, 2010) .... 5, 7, 9

*Gunn v. Minton*,
568 U.S. 251 (2013) .... 1, 5, 9

*Hunter v. Philip Morris USA*,
582 F.3d 1039 (9th Cir. 2009) .... 4

*Kripke v. Safeway, Inc.*,
2018 WL 3491903 (N.D. Cal. July 20, 2018) .......... 7

*Lippit v. Raymond James Fin. Servs., Inc.*,
340 F.3d 1033 (9th Cir. 2003) .......... 7, 8

*Martin v. Aspen Skiing Co.*,
2020 WL 6376674 (C.D. Cal. Oct. 30, 2020) .......... 7

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) .......... 12

*Merrell Dow Pharms., Inc. v. Thompson*,
478 U.S. 804 (1986) .......... 5, 9

*Moore v. Permanente Med. Grp. Inc.*,
981 F.2d 443 (9th Cir. 1992) .......... 13

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012) .......... *passim*

*Patel v. Del Taco, Inc.*,
446 F.3d 996 (9th Cir. 2006) .......... 12

*Rains v. Criterion Sys., Inc.*,
80 F.3d 339 (9th Cir. 1996) .......... *passim*

*Rao v. Tyson Foods, Inc.*,
2009 WL 1657458 (E.D. Cal. June 12, 2009) .......... 12

*Roskind v. Morgan Stanley Dean Witter & Co.*,
165 F. Supp. 2d 1059 (N.D. Cal. 2001) .......... 8

*Rucho v. Common Cause*,
139 S. Ct. 2484 (2019) .......... 11

*Vergara v. State*,
246 Cal.App.4th 619 (2016) .......... 10

**Statutes**

28 U.S.C. § 1331 .......... 9

28 U.S.C. § 1447 .......... 1, 12, 13

52 U.S.C. § 10301 .......... *passim*

Cal. Const. art. I, § 2 .......... 2

Cal. Const. art. I, § 7 .......... 2

Cal. Elec. Code § 21500 .......... 2, 3, 7, 11

**Other Authorities**

Assembly Bill 849 .......... 2, 3

Senate Comm. on Appropriations, Fiscal Summary A.B. 849 (July 3, 2019) .......... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants removed this case from Riverside Superior Court to this federal Court on the ground that one of Plaintiffs' two state law causes of action references Section 2 of the federal Voting Rights Act ("VRA"), 52 U.S.C. § 10301. But the VRA merely provides one of the four independent and alternative theories underlying Plaintiffs' single claim that Defendants violated the California Fair Redistricting for Municipalities and Political Subdivisions ("FAIR MAPS") Act. The remaining three alternative theories supporting Plaintiffs' FAIR MAPS Act claim arise entirely under California state law. It is settled Ninth Circuit law that when "a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)). Accordingly, this case was not removable from state court, and must be remanded under 28 U.S.C. § 1447(c).

Removal is doubly improper here, because litigating Plaintiffs' California state law claims in federal court would so clearly disrupt the state-federal balance—a balance that the Supreme Court has instructed federal courts to carefully *protect* when applying the removal statute. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013). This case presents novel questions of state statutory and constitutional interpretation that are properly adjudicated in California state courts.

For both of these independently sufficient reasons, Plaintiffs respectfully request that the Court expeditiously remand this matter to state court. Plaintiffs also request that the Court order that Plaintiffs are entitled to their costs and fees incurred in opposing Defendants' objectively unreasonable removal. *See* 28 U.S.C. § 1447(c).

## FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2022, Plaintiffs filed a Verified Petition for a Writ of Mandate and Complaint for Declaratory and Injunctive Relief ("Petition/Complaint") in the Superior

Court of California for the County of Riverside, challenging the County's 2021 supervisorial district plan ("2021 Plan"). Notice of Removal, Ex. 1 (ECF 1-1) ("Pet./Compl."). Individual Plaintiffs are California residents, *id*. at 5-7 ¶¶ 13-18, and Plaintiff Inland Empire United is a local community-organizing and coalition-building non-profit, *id*. at 3-4 ¶ 8. Defendants are either California governmental entities or Riverside County officials. *Id*. at 7-8 ¶¶ 19-22. The Petition/Complaint includes two state-law causes of action: 1) a petition for a writ of mandate ordering the County to comply with the California FAIR MAPS Act, *id*. at 8 ¶ 23 (citing Cal. Civ. Proc. § 1085), 20-24 ¶¶ 80-101; and 2) a disparate impact claim under the California Constitution's equal protection provisions, *id*. at 24-25 ¶¶ 102-110 (citing Cal. Const. art. I, §§ 2, 7). Plaintiffs do not allege any federal causes of action. *See id*. at 20-25 ¶¶ 80-110.

The FAIR MAPS Act is California's most significant redistricting reform in over half a century. *Id*. at 2-3 ¶ 3. Unlike past state law that made complying with map-drawing criteria discretionary, the Act imposes a set of mandatory, ranked criteria on cities and counties that are meant to promote the fair representation of racial and political minorities.[1] *See id*. at 2-3 ¶ 3, 10 ¶ 35. In descending order of priority, the criteria are: 1) contiguity; 2) maintaining communities of interest; 3) preserving the geographic integrity of cities; 4) easily identifiable boundaries; and 5) compactness. *Id*. at 10 ¶ 35 (citing Cal. Elec. Code § 21500(c)). Importantly, the Act does not list incumbency as a ranked criterion. Instead, the Act clarifies that communities of interest do not include relationships with incumbents. *Id*. (citing Cal. Elec. Code §

[1] This purpose is reflected in the Act's legislative history. A fiscal summary of Assembly Bill 849 (the FAIR MAPS Act's enacting legislation), for example, stated, "Since cities and counties are allowed—but not required—to consider topography, geography, communities of interests, and cohesiveness, contiguity, integrity, and compactness of territory, some *local governments continue to draw districts that do not meet these criteria and have deleterious effects on representation of political or racial minorities*." Senate Comm. on Appropriations, Fiscal Summary A.B. 849 at 2 (July 3, 2019) (emphasis added).

21500(c)(2)). The FAIR MAPS Act also prohibits vote dilution by requiring jurisdictions to comply with the California Constitution and Section 2 of the federal VRA. *Id*. at 10 ¶ 34 (citing Cal. Elec. Code § 21500(b)). Because the law was passed in 2019, *see* Assemb. B. 849 (2019-2020 Reg. Sess.) (Oct. 8, 2019), this redistricting cycle is the first opportunity for state courts to interpret the FAIR MAPS Act.

The principal allegation in Plaintiffs' Petition/Complaint is that the County's 2021 Plan improperly divides two communities of interest with substantial Latino populations among three districts. *See, e.g.*, Pet./Compl. at 2 ¶ 1, 3 ¶ 5, 15 ¶ 53. These communities are centered around the cities of Jurupa Valley and northwest Riverside, and around the cities of Moreno Valley and Perris. *Id*. at 9 ¶¶ 27-29, 15 ¶ 53. Plaintiffs allege that Defendants violated the FAIR MAPS Act when the Board prioritized incumbency over the mandatory, ranked criteria, and when it misapplied those criteria by prioritizing the geographic integrity of cities over keeping communities of interest whole. *Id*. at 3 ¶ 5, 15 ¶ 53, 23 ¶¶ 96-97. Plaintiffs further allege that the County's division of the two Latino communities of interest dilutes the Latino vote. *Id.* at 2 ¶ 1-2, 14-15 ¶¶ 51-52. Thus, by cracking Latino communities of interest among three districts, the County violated the FAIR MAPS Act's prohibitions against vote dilution. *Id.* at 21-23 ¶¶ 87-95 (alleging that the 2021 Plan violates the California Constitution and the VRA, as incorporated by the FAIR MAPS Act).

Among other things, Plaintiffs seek a peremptory writ of mandate—a state procedural remedy—"compelling Respondents/Defendants to adopt a supervisorial district map that comports with the FAIR MAPS Act," including by ensuring that the aforementioned communities of interest are not "split across different supervisorial districts." *Id*. at 26 ¶ 1. The Petition/Complaint makes clear that Plaintiffs' FAIR MAPS Act writ of mandate claim and right to the requested relief—a district map that unites the Jurupa Valley and northwest Riverside community of interest and the Moreno Valley and Perris community of interest—are supported by at least four alternative and independent state law theories, only one of which incorporates federal law. *See id*. at

20-24 ¶¶ 80-101, 26 ¶ 1. As the Petition/Complaint states, each of these four alleged violations "provides an alternative and independently sufficient theory establishing a violation of the FAIR MAPS Act. None of these theories is itself a necessary element of Plaintiffs/Petitioners' FAIR MAPS Act claim." *Id.* at 21 ¶ 86.

On August 3, 2022, Defendants removed the action to this Court, asserting federal question jurisdiction. *See* Notice of Removal (ECF 1) ¶ 2. On August 10, 2022, Plaintiffs met and conferred with Defendants, *see* L.R. 7-3, advised Defendants that this Court does not have jurisdiction over the action, and asked them to remand the action, Murray Decl. ¶ 5. Defendants refused to do so. *Id*.

On August 10, 2022, Defendants filed their Answer to Plaintiffs' Petition/Complaint. ECF 9.

## ARGUMENT

### I. Defendants' removal of this case was improper.

Following removal of an action to federal court based on federal question jurisdiction, it is "presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (alteration in original, internal quotation marks omitted). The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Id.* (internal quotation marks omitted); *see also Bank of Am.*, 672 F.3d at 667 ("Removal statutes are to be 'strictly construed' against removal jurisdiction.") (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Under the well-pleaded complaint rule, the plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*

*Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, Plaintiffs' two causes of action—for violation of California's FAIR MAPS Act and for violation of the California Constitution—are entirely state created.

As the Supreme Court has emphasized, federal question jurisdiction attaches to only a "special and small category" of state-created causes of action. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Specifically, federal jurisdiction over a state-created cause of action exists only if federal law is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). When any one of these requirements is not satisfied, federal question jurisdiction does not exist. *Id.* Under this test, federal question jurisdiction is usually found where the plaintiff's claim turns *entirely* on a pure issue of federal law. *See, e.g., Grable*, 545 U.S. at 315 (quiet-title action was properly in federal court when plaintiff's claim turned entirely on whether IRS's mailing of tax sale notice to plaintiff complied with federal notification statute).

This lawsuit fails to satisfy either the first or fourth prongs of the *Gunn/Grable* test: (a) federal law is not "necessarily raised" by Plaintiffs' Petition/Complaint, and (b) resolving Plaintiffs' state-law claims in federal court would disrupt the federal-state balance approved by Congress.

### A. Plaintiffs' FAIR MAPS Act claim does not "necessarily raise" a federal issue.

Defendants fail to meet the first *Gunn/Grable* requirement. The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also Guerra v. Carrington Mortg. Servs. LLC*, 2010 WL 2630278, at *2 (C.D. Cal. June 29, 2010) ("California district courts have held that mere references to federal law in [state] claims do not convert the claim into a federal cause of action."

(citations omitted)). In particular, where a state-created cause of action "can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains*, 80 F.3d at 346; *Bank of Am.*, 672 F.3d at 675 (same); *see also Christianson v. Colt Inds. Operating Co.*, 486 U.S. 800, 809-10 (1988) ("a claim supported by alternative theories in the complaint may not form the basis for [federal patent] jurisdiction unless patent law is essential to each of those theories").

In *Rains*, the Ninth Circuit considered whether it had jurisdiction over a state law claim for wrongful termination in violation of public policy. 80 F.3d at 343 & n.2. To prevail, the plaintiff had to prove as one element of the claim that his termination was contrary to a fundamental public policy "delineated in constitutional or statutory provisions." *Id.* at 343. The plaintiff alleged that the employer violated the public policy against religious discrimination in employment embodied in the California Constitution, the California Fair Employment and Housing Act ("CFEHA"), and federal Title VII law. *Id.* The court concluded that it lacked federal question jurisdiction, reasoning that, because the plaintiff identified two state law public policy violations, the plaintiff's allegation that the termination also violated the public policy set forth in Title VII was not *necessary* to his claim. *Id.* at 345-46.

In accordance with *Rains*, courts consistently remand cases involving state law claims that reference federal law, but where establishing a violation of federal law is not a *necessary* element of the claim. *See, e.g.*, *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F. Supp. 2d 1059, 1066-67 (N.D. Cal. 2001) (federal law not a necessary element of plaintiff's state-law breach of fiduciary duty claim where violation of federal rules was only one of several alleged theories of duty breach, the rest of which sounded purely in state law). Indeed, courts routinely apply the *Rains* rule to actions involving state claims under laws like the FAIR MAPS Act that contain "borrowing provisions," i.e., provisions that require compliance with particular federal laws. In *Bank of*

*America*, for example, the plaintiff brought a lawsuit under Nevada's Deceptive Trade Practices Act ("DTPA"), which prohibits violating "a state or federal statute or regulation relating to the sale or lease of goods or services." 672 F.3d at 674-75. As part of its DTPA claim, the plaintiff alleged that the defendant violated federal laws and made misrepresentations about a federal program. *Id.* at 674. Because liability on the plaintiff's claim could be established on purely state-law grounds, the federal issues were not "pivotal," and the court lacked jurisdiction. *Id.* at 675. For the same reason, courts remand actions involving similar claims under the California Unfair Competition Law ("UCL") and the Unruh Civil Rights Act, two California laws that include borrowing provisions. *See, e.g.*, *Lippit v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (federal law not a necessary element of plaintiff's UCL claim based on alleged violations of federal and state law when purely state-law theories were sufficiently alleged to sustain the claim "without resort to federal law"); *Kripke v. Safeway, Inc.*, 2018 WL 3491903, at *8 (N.D. Cal. July 20, 2018) (same); *Gershfeld v. Champion Aerospace LLC*, 2013 WL 12123685, at *2-3 (C.D. Cal. Oct. 8, 2013) (same); *California ex rel. Herrera v. Guajardo*, 2011 WL 62432, at *2 (N.D. Cal. Jan. 7, 2011) (same); *Guerra*, 2010 WL 2630278, at *3 (same); *Martin v. Aspen Skiing Co.*, 2020 WL 6376674, at *3 (C.D. Cal. Oct. 30, 2020) (plaintiff's cause of action under Unruh Act, which expressly makes violation of the federal Americans with Disabilities Act a violation of the Unruh Act, did not present "an essential question of federal law").

The rule requiring remand when a plaintiff pleads alternative and independent state and federal law theories within a single state-law cause of action squarely applies here. The federal VRA is referenced in the FAIR MAPS Act's borrowing provision requiring counties to "adopt supervisorial district boundaries that comply with the United States Constitution, the California Constitution, and the federal [VRA]." Cal. Elec. Code § 21500(b). Plaintiffs' Petition/Complaint alleges four independently sufficient theories of liability under the FAIR MAPS Act, all of which are pleaded under California law and only one of which alleges violation of the VRA via the borrowing

provision. Pet./Compl. at 20-24 ¶¶80-101. The Petition/Complaint expressly alleges that each of these four theories "provides an alternative and independently sufficient theory establishing a violation of the FAIR MAPS Act. None of these theories is itself a necessary element of Plaintiffs/Petitioners' FAIR MAPS Act claim." *Id.* at 21 ¶ 86. Two of Plaintiffs' theories of liability do not reference the FAIR MAPS Act's borrowing provision *at all*. A third references the FAIR MAPS Act's borrowing provision's incorporation of the requirements of the California Constitution. Thus, as in *Bank of America*, *Rains*, and numerous UCL and Unruh Act cases, resolution of the federal issue embedded in only one of four theories underlying Plaintiffs' FAIR MAPS Act claim is not "pivotal" to Plaintiffs' case. *See Bank of Am.*, 672 F.3d at 675; *Lippit*, 340 F.3d at 1046.

Far from presenting a claim that necessarily requires resolution of a federal law issue, a court could hold that Defendants violated the FAIR MAPS Act without concluding that they violated Section 2 of the VRA. For example, a court may find that Defendants' 2021 Plan violated the FAIR MAPS Act because it did not comply with the California Constitution's equal protection guarantees, *or* because Defendants did not apply the Act's mandatory ranked criteria in the priority required by the Act, *or* because Defendants prioritized incumbency protection over the FAIR MAPS Act's mandatory ranked criteria. *See California ex rel. Herrera*, 2011 WL 62432, at *3 (determination of federal issue not necessary to UCL claim where "a jury could find" liability on the state cause of action "without finding" any federal-law violation). These independent, alternative theories of liability are based purely in state law. Plaintiffs' FAIR MAPS Act cause of action is thus directly analogous to a UCL claim alleging a violation of federal law along with other independent state-law theories of liability. As the courts have uniformly held, such claims must be remanded because they do not "necessarily raise" a federal question.

**B. Exercising federal jurisdiction would disrupt the federal-state balance.**

The fact that Plaintiffs' FAIR MAPS Act claim does not "necessarily raise" a

federal question is alone sufficient to require remand of this case. *See Gunn*, 568 U.S. at 258 (requiring a showing of "all four of [the *Grable/Gunn*] requirements" to establish jurisdiction); *see also Guerra*, 2010 WL 2630278, at *3 (remanding because federal law not a necessary element of plaintiff's state-law claim, without considering other *Gunn/Grable* requirements). But even if federal law *were* necessarily raised by Plaintiffs' two state-law claims, federal question jurisdiction still would not be appropriate here because its exercise would disrupt "the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

The Supreme Court has instructed federal courts to approach federal question jurisdiction under § 1331 "with an eye to practicality and necessity," and has cautioned that, "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810. Following this instruction, courts in the Ninth Circuit have refused to exercise federal jurisdiction over state-law consumer protection suits that allege, among various theories of liability, violation of a federal statute incorporated into state law. *See supra* Section I.A (citing cases). As the *Bank of America* court observed, state courts frequently handle such lawsuits, including the federal law allegations therein, and federal courts taking jurisdiction over them would improperly and unnecessarily "herald[ ] a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 676 (quoting *Grable*, 545 U.S. at 319) (alterations in original).

Similarly, the court in *Rains* reasoned that it would be both impractical and improper to take jurisdiction of a plaintiff's wrongful termination claim alleging violations of public policies embodied in Title VII and the California Constitution. 80 F.3d at 347. The court observed that both sources of law prohibited religious discrimination and reasoned that finding federal jurisdiction over the claim "would make it difficult, if not impossible, to bring an action for wrongful termination in violation of public policy in California state courts . . . whenever a state policy is similar

to a federal policy." *Id.* To avoid shifting a distinctly state cause of action into federal court, the Ninth Circuit held that "the invocation of [federal law] as a basis for establishing an element of a state law cause of action does not confer federal question jurisdiction when the plaintiff also invokes a state constitutional provision or a state statute that can and does serve the same purpose." *Id.* at 345; *see also Caldwell v. Northern Pac. Morg. Corp.*, 2011 WL 1303629, at *3 (N.D. Cal. Apr. 4, 2011) (applying *Rains* to reject jurisdiction over UCL claim alleging violation of federal law among other theories).

Defendants here seek to upend this balance. The gravamen of the Petition/Complaint is that Defendants' 2021 Plan violates California's FAIR MAPS Act and the California Constitution because it splits up two historically underrepresented communities of interest with substantial Latino populations among three districts. *See, e.g.*, Pet./Compl. at 2-3 ¶ 3, 3 ¶ 5. Plaintiffs' theories that Defendants unlawfully prioritized incumbency over the FAIR MAPS Act's mandatory ranked criteria, misapplied those criteria by prioritizing the geographic contiguity of cities over keeping communities of interest whole, and diluted the voting power of Latinos in Riverside County in violation of California's Constitution raise novel questions of California statutory and constitutional interpretation, including whether statutes and policies that have a disparate impact on the fundamental voting rights of members of minority groups are subject to strict scrutiny under California equal protection principles. *See, e.g., Vergara v. State*, 246 Cal.App.4th 619, 648 n.13 (2016) (under California Constitution, strict scrutiny applies where "facially neutral" statute "impinges a fundamental right . . . irrespective of motive or intent"); *Board of Supervisors v. LAFC*, 3 Cal.4th 903, 913 (1992) (under California Constitution, right to vote is fundamental right). Moreover, Plaintiffs' Petition/Complaint seeks a peremptory writ of mandate, a distinctly state-court remedy. *See id.* at 3 ¶ 7, 15 ¶ 53, 21-22 ¶¶ 87-92, 23 ¶¶ 96-97. Yet Defendants would deprive California courts of the ability to construe this novel California statute (and California's own constitution) and deprive Plaintiffs of a uniquely expeditious

state-court remedy on grounds that this case must be heard in federal court simply because Plaintiffs allege unlawful vote dilution that is also prohibited under federal law.

Such an outcome is inconsistent with precedent. Here, as in *Rains*, "a state constitutional provision . . . can and does serve the same purpose" as the federal law (Section 2 of the VRA) invoked as part of Plaintiffs' FAIR MAPS Act cause of action. 80 F.3d at 345. Both the California Constitution and VRA, as incorporated into the FAIR MAPS Act, prohibit vote dilution, and Plaintiffs plead both alternative bases of liability. Were the federal courts to improperly take jurisdiction of state claims such as this one, it would become "difficult, if not impossible" to bring a vote dilution FAIR MAPS Act claim in California state courts, *even though* the California Constitution independently prohibits the voting rights abridgment that is prohibited by the VRA, and *even though* the California legislature has expressed a policy against vote dilution by including both these sources of law in the "borrowing provision" of the FAIR MAPS Act. Accepting Defendants' position here would also inappropriately bring the adjudication of non-vote dilution FAIR MAPS Act theories, such as improper consideration of political parties and incumbency or misapplication of the Act's mandatory ranked criteria (criteria not independently mandated under federal law), into federal court any time that plaintiffs included allegations of vote dilution in a single FAIR MAPS Act cause of action. *See* Cal. Elec. Code. §§ 21500(c)(2) & (d) (prohibiting partisan gerrymandering and the improper consideration of incumbency); *c.f.*, *Rucho v. Common Cause*, 139 S. Ct. 2484, 2507 (2019) (holding that partisan gerrymandering claims are nonjusticiable but acknowledging that state legislatures and courts can address the issue). This result would sorely disrupt the federal-state balance *Grable* cautions must be protected, and it would do so in the context of state redistricting, an area in which the Supreme Court has repeatedly emphasized that comity concerns are paramount. *See, e.g.*, *Growe v. Emison*, 507 U.S. 25, 32-34 (1993) (in finding that district court should have deferred to the state's judicial redistricting panel, holding that "reapportionment is primarily the duty and responsibility of the State

through its legislature or other body, rather than of a federal court"). For this reason as well, removal is improper.

**II. The Court should award Plaintiffs their costs and fees.**

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In enacting this provision, Congress was concerned that "removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). It created this fees provision to deter defendants from removing cases without an "objectively reasonable basis for seeking removal," and to compensate plaintiffs who must spend time and resources opposing these improper removals. *Id.* at 141. To achieve this objective, as "a general rule, if, at the time the defendant filed his notice of removal in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorney's fees." *Rao v. Tyson Foods, Inc.*, 2009 WL 1657458, at *2, 3 (E.D. Cal. June 12, 2009) (awarding fees) (alteration and citation omitted); *see Patel v. Del Taco, Inc.*, 446 F.3d 996, 999-1000 (9th Cir. 2006) (affirming fee award where there was "no objectively reasonable basis for removal").

Here, there is longstanding Ninth Circuit precedent, and a long series of district court decisions following that precedent, clearly stating that where a state-created cause of action is supported by alternative and independent theories, only one of which involves federal law, federal law is not necessarily raised by the claim. *Rains*, 80 F.3d at 346; *see also, e.g.*, *Christianson*, 486 U.S. at 809-10; *Bank of Am.*, 672 F.3d at 675. Defendants lack any objectively reasonable basis for attempting to distinguish this line of cases.

As discussed in Part I.A., *supra*, this principle has been applied time and again in cases directly analogous to this one that involve a state cause of action based on multiple independently sufficient theories of liability, only some of which are based on

borrowing provisions that incorporate federal law. The federal courts universally remand such cases for lack of federal question jurisdiction. Federal law is not essential to all of the alternative theories supporting Plaintiffs' single FAIR MAPS Act claim, and the clear rule is that it must be if federal question jurisdiction is to attach to a state-created cause of action. As such, this is exactly the type of unfounded removal that merits an award of costs and fees.

The Court should issue an order remanding this matter to state court and holding that Plaintiffs are entitled to their fees and costs incurred opposing the improper removal. To conserve the Court's and parties' resources, the Court can defer determination of the amount of fees and costs until after the case is remanded, because "an award of attorney's fees [under 28 U.S.C. § 1447(c)] is a collateral matter" over which a federal court "retains jurisdiction even after being divested of jurisdiction on the merits" by remanding the case to state court. *Moore v. Permanente Med. Grp. Inc.*, 981 F.2d 443, 445 (9th Cir. 1992). If the Court finds Plaintiffs entitled to fees and costs, the parties can then meet and confer to attempt to agree on the amount of those fees and costs. If the parties cannot reach agreement, Plaintiffs will then file their fee motion. *See Moore*, 981 F.2d at 445 (federal court retains jurisdiction over § 1447(c) fees motion even after remanding case to state court).

## CONCLUSION

To ensure that this case can be litigated and Plaintiffs can seek relief in time for the March 5, 2024 supervisorial district elections, Plaintiffs respectfully request that the Court expeditiously remand this matter to state court. The Court should also order that Plaintiffs are entitled to their costs and fees for opposing Defendants' objectively unreasonable removal. *See* 28 U.S.C. § 1447(c).

Dated: August 18, 2022

Respectfully submitted,

By: */s/Matthew J. Murray*
Matthew J. Murray

MATTHEW J. MURRAY
BRONWEN B. O'HERIN
Altshuler Berzon LLP

*Attorneys for Petitioners/Plaintiffs Inland Empire United, Evelyn Arana, Elizabeth Ayala, Edgar Castelan, and Robert Garcia*

JULIA A. GOMEZ
PETER BIBRING
MELISSA GOODMAN
PETER J. ELIASBERG
ACLU Foundation of Southern California

MOE KESHAVARZI
Sheppard, Mullin, Richter & Hampton LLP

*Attorneys for Petitioners/Plaintiffs Araceli Caldera and Daisy Lopez*