J S - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE UNITED; EVELYN ARANA; ELIZABETH AYALA; ARACELI CALDERA; EDGAR CASTELAN; ROBERT GARCIA, and DAISY LOPEZ,<br><br>Plaintiffs,<br><br>    v.<br><br>RIVERSIDE COUNTY; RIVERSIDE COUNTY BOARD OF SUPERVISORS; KEVIN JEFFRIES, in his official capacity; KAREN SPIEGEL, in her official capacity; CHUCK WASHINGTON, in his official capacity; V. MANUEL PEREZ, in his official capacity; JEFF HEWITT, in his official capacity; and REBECCA SPENCER, in her official capacity,<br><br>Defendants. | Case No. 5:22-cv-01366-SSS-KKx<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND [Dkt. 12]** |

On June 14, 2022, Inland Empire United ("IE United")[1] and six individual Latino voters residing in Riverside County (collectively, "Plaintiffs") filed this action in Riverside Superior Court.  [Dkt. 1-1].  Riverside County, its Board of Supervisors, each member of the Board in his or her official capacity, and the Riverside County Registrar of Voters in her official capacity (collectively, "Defendants") removed to federal court on August 3, 2022.  [Dkt. 1].

Plaintiffs challenge Riverside County's newly adopted supervisory districts under the California Fair and Inclusive Redistricting for Municipalities and Political Subdivisions ("Fair Maps") Act and the California Constitution. Defendants nevertheless assert that this Court has federal question jurisdiction over the case.

Now before the Court is Plaintiff's motion to remand.  [Dkt. 12].  The motion is fully briefed. [Dkt. 15; Dkt. 17].  Pursuant to this Court's order issued September 28, 2022 [Dkt. 20], the parties have also provided supplemental briefing [Dkt. 23; Dkt. 24; Dkt. 26].

The Court previously found the motion appropriate for resolution without a hearing and vacated the hearing set for December 2, 2022.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  [Dkt. 27].  The Court now **GRANTS** Plaintiff's motion and **REMANDS** this action to Riverside Superior Court.

---

[1] Per their Complaint, IE United is a nonprofit organization comprised of multiple member organizations that "represent or have members who are Latino voters in Riverside County, including Latino voters who reside in" the contested supervisory districts.  IE United asserts that it devoted significant time, energy, and resources to advocacy and community organizing around redistricting and voting rights during the County's 2021 supervisory redistricting process and diverted its limited resources from other projects to this effort.  [Dkt. 1-1 at ¶ 8-11].

# I.  BACKGROUND

The California Elections Code, as amended by the Fair Maps Act, establishes requirements that the local government bodies tasked with redistricting following each decennial census must follow.  First, it underscores that all maps must comply "with the United States Constitution, the California Constitution, and the federal Voting Rights Act of 1965."  Cal. Elec. Code § 21500(b).

Then, "to the extent practicable," each county board is to adopt district boundaries according to four criteria, listed in order of priority:

> (1) Contiguity of districts;
>
> (2) Geographic integrity of "any local neighborhood or local community of interest," where "community of interest" is defined as "a population that shares common social or economic interests that should be included within a single district for purposes of its effective and fair representation";
>
> (3) Coincidence with "natural and artificial barriers," "streets," or "boundaries of the city," so that district boundaries may be "easily identifiable and understandable by residents *and*
>
> (4) Geographical compactness, so that "nearby areas of population are not bypassed in favor of more distant populations."

Finally, the statute specifies that "the council shall not adopt council district boundaries for the purpose of favoring or discriminating against a political party."  Cal. Elec. Code § 21500(c).

Plaintiffs bring four claims under the Fair Maps Act and a fifth cause of action under the California Constitution.  Defendants' arguments in support of federal question jurisdiction pertain only to these first four.

Plaintiff's first and second Fair Maps Act claims both assert that the chosen supervisory map disparately impacts Latino voters' ability to elect

1  candidates of their choice to the County Board of Supervisors.  Plaintiffs allege

2  that the 2020 Census showed that Riverside County contained two

3  geographically compact Latino communities, each large and politically cohesive

4  enough to form an effective voting bloc in its own supervisory district.

5  Nevertheless, Defendants selected a map which 'cracks' these two populations

6  across three predominately non-Latino districts and denying the Latino residents

7  of Riverside County an equal opportunity to elect their candidates of choice to

8  the Board of Supervisors.

9      Plaintiffs assert that this dilution of Latino voting strength contravenes the

10  Fair Maps Act's requirements that any redistricting plan comply with both

11  Section 2 of the federal Voting Rights Act (VRA) ("Violation 1") and the

12  California Constitution's equal protection provisions ("Violation 2").  [Dkt. 1-1

13  at ¶ 87-92; ¶ 93-95].  They also contend that in choosing amongst potential

14  maps, Defendants failed to consider the mandatory ranked criteria in the

15  designated order ("Violation 3") and improperly considered incumbency

16  ("Violation 4"). [*Id.* at ¶ 96-97].

17      Although Plaintiff's causes of action arise only under state statutory and

18  constitutional provisions [Dkt. 1-1 at ¶ 87-110], Defendants maintain that

19  federal question jurisdiction is proper because the resolution of Plaintiff's Fair

20  Maps Act claims will "necessarily turn on" on the construction of federal law –

21  specifically, Defendants' obligations under Section 2 of the VRA.  [Dkt. 15 at

22  13].

23                    **II.  LEGAL STANDARD**

24      Under 28 USC § 1441(a), any civil action over which the federal district

25  courts have original jurisdiction is removable. In turn, district courts have

26  original federal question jurisdiction of actions "arising under the Constitution,

27  laws, or treaties of the United States." 28 U.S.C. § 1331.

28

1    The basis for federal question jurisdiction must be found in plaintiff's
2    well-pled complaint.  A federal issue that arises only as part of defendant's
3    anticipated defense is "not part of a plaintiff's properly pleaded statement of his
4    or her claim," and so cannot confer jurisdiction. *Rivet v. Regions Bank of*
5    *Louisiana*, 522 U.S. 470, 470-72 (1998).
6          Although the "vast majority of cases brought under the general federal-
7    question jurisdiction of the federal courts are those in which federal law creates
8    the cause of action," a claim based upon state law may also be said to "arise
9    under" federal law for the purposes of removal jurisdiction "where the
10   vindication of a right under state law necessarily turn[s] on some construction of
11   federal law.'" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804,
12   808 (1986).
13         Because it is "presumed that a cause lies outside [the] limited
14   jurisdiction" of the federal courts, the burden of establishing that removal is
15   proper rests with the defendant.  *Hunter v. Philip Morris USA*, 5 F.3d 1039,
16   1042 (9th Cir. 2009).  To establish federal question jurisdiction over a state law
17   claim on removal, the defendant must demonstrate that the purportedly
18   embedded federal issue is "(1) necessarily raised, (2) actually disputed, (3)
19   substantial, and (4) capable of resolution in federal court without disrupting the
20   federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251,
21   258 (2013).
22                          **III.  DISCUSSION**
23        The parties dispute only the first and fourth factors set forth in *Gunn v.*
24   *Minton*.  Because neither of Defendants' two arguments in support of the first
25   *Gunn* factor are persuasive, the Court concludes that federal jurisdiction does
26   not attach without reaching the remainder of the parties' arguments.
27         First, Defendants assert that *all* of Plaintiffs' four Fair Maps Act
28   "violations" necessarily raise a federal question, because the statute establishes

1   compliance with Section 2 of the VRA as a redistricting requirement which

2   supersedes any consideration of the ranked criteria  [Dkt. 15 at 14, 15].

3   Defendants therefore maintain that "any determination of whether [they] have

4   violated these…provisions of the Fair Maps Act… must necessarily take into

5   account the degree to which Defendants' choices and actions in that regard were

6   constrained by or were the result of its obligation to *first* comply with federal

7   law."  [Dkt. 15 at 14].

8        But despite the strategic use of passive voice in their briefing, what

9   Defendants describe is their own expected invocation of the VRA's constraints

10  as a *defense* to Plaintiffs' first, third, and fourth FAIR MAPS Act claims.  *See,*

11  *e.g., Bartlett v. Strickland*, 556 U.S. 1, 6-7 (2009) (where plaintiffs alleged an

12  electoral district was drawn in violation of a state law "whole county"

13  requirement, "state authorities… invoke[d] the Voting Rights Act as a

14  defense… [arguing] that [Section 2] required them to draw the district in

15  question in a particular way.").  Plainly, a federal issue raised only in defense

16  cannot confer jurisdiction.

17       Alternatively, Defendants assert that Plaintiffs' Violation 2 under the Fair

18  Maps Act – alleging that the redistricting plan violates Section 2 of the VRA –

19  constitutes a "discrete and independent 'claim' that 'necessarily raises' an issue

20  of federal law."  [Dkt. 15 at 20].

21       A state law claim "necessarily raise[s]" a federal issue only if the federal

22  "right or immunity… [is] an element, and an essential one, of the plaintiff's

23  cause of action."  *Gully v. First Nat. Bank*, 299 U.S. 109, 112 (1936); *see also*

24  *Franchise Tax Board v. Const. Laborers Trust*, 463 U.S. 1, 13 (1983).  Where a

25  "state-created cause of action can be supported by alternative and independent

26  theories – one of which is a state law theory and one of which is a federal law

27  theory" federal question does not attach because federal law is not a necessary

28

1  element of the claim." *See Rains v. Criterion Systems, Inc*., 80 F.3d 339, 346
2  (9th Cir. 1996).

3      Here, Plaintiffs' Violation 2 (invoking the federal VRA) and Violation 3
4  (invoking the California constitution's equal protection provisions) offer two
5  "alternative and independent theories" on which a court may find Defendants
6  liable for unlawful vote dilution.

7      Section 2 of the VRA proscribes any "voting or standard, practice, or
8  procedure…imposed or applied…in a manner which results in a denial or
9  abridgement of the right of any citizen of the United States to vote on account of
10 race or color." It is well-established that the "right to vote" protected by Section
11 2 encompasses not only the individual right to cast a ballot, but also the right of
12 politically cohesive and geographically compact minority groups to fair and
13 equal opportunity to elect the representatives of their choice. *See, e.g.,*
14 *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). A redistricting body may
15 therefore be found liable under the VRA for adopting an electoral map that
16 splits such a group across two or more districts so that they nowhere constitute
17 an effective electoral majority.

18     In Violation 3, Plaintiffs identify state constitutional provisions that they
19 credibly assert "can and [do] serve the same purpose" as the federal law
20 described above. These portions of the California Constitution prohibit
21 government policies that infringe upon the ability of a protected class (here,
22 Latinos) to enjoy any fundamental right (here, the right to vote). *See Board of*
23 *Supervisors v. LAFC*, 3 Cal. 4th 903, 913 (1992) (under the California
24 Constitution, the right to vote is a fundamental right). Like the VRA,
25 California's equal protection clause proscribes policies that have discriminatory
26 *effect*, regardless of the defendants' motive or intent. *See Vergara v. State*, 246
27 Cal. App. 4th 619, 648 n.13 (2016).

28

-7-

1    Because Plaintiffs may establish liability for vote dilution based upon the

2    California constitution alone, Violation 2 merely offers an "alternative" theory

3    of liability and not an "essential element" of Plaintiff's claim.  As such, its

4    embedded Section 2 issues are not "necessarily raised" and cannot confer

5    federal question jurisdiction.

6    Defendants have failed to demonstrate that any of Plaintiffs' four Fair

7    Maps Act claims satisfy the first *Gunn* factor.  Thus, this case is properly

8    returned to the state court where it was originally filed.

9                            **IV.  CONCLUSION**

10   For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion and

11   **ORDERS** this case remanded to the Superior Court of the State of California in

12   and for the County of Riverside.  Finding that Defendants' grounds for removal

13   were mistaken but not objectively unreasonable, the Court **DENIES** Plaintiffs'

14   request for attorney fees.[2]

15

16   **IT IS SO ORDERED.**

17   Dated: January 23, 2023      _____

18                                SUNSHINE S. SYKES
                                  United States District Judge
19

20

21

22

23

24   _____

25

26   [2] Under 28 U.S.C. § 1447(c), a court has wide discretion to grant or deny
     attorney fees when remanding a case.  *Moore v. Permanente Medical Group,*
27   *Inc.*, 981 F.2d 443, 447 (9th Cir. 1992).  Attorney fees should be granted only
     where the removing party lacked any objectively reasonable grounds for
28   removal.  *Martin v. Franklin Capitol Corp.*, 546 U.S. 132, 141 (2005).